IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE COMPANY,     \*

          \*

     Plaintiff,     \*

          \*

     vs.     \*     Civil Action No.  ADC-18-1199

          \*

SHAKIA BLUE, *et al.*,     \*

          \*

     Defendants.     \*

          \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this Declaratory Judgment action, Plaintiff has filed a motion for summary judgment ("Plaintiff's Motion") (ECF No. 38), Defendant has filed a response (ECF No. 44), and Plaintiff has filed a reply (ECF No. 47). All filings are timely and the motions are ripe for review. After considering Plaintiff's Motion and the responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Plaintiff's Motion for Summary Judgment.

### FACTUAL BACKGROUND

This declaratory judgment action arises out of lead paint litigation in Baltimore City Circuit Court filed against Defendant Stanley Rochkind and others ("Defendants" or "Rochkind Insureds"). ECF No. 1 at 3, ¶ 2 (*Shakia Blue v. Best Investments, Inc., et al.*, Case No. 24-C-17-003191 LP (the "Underlying Suit")). Rochkind and Defendants were landowners who managed, owned, and supervised certain rental properties where the injured plaintiff alleged she suffered lead poisoning over a period of time. *Id.* ¶¶ 14–18. Plaintiff seeks a declaration regarding its contractual obligations to Defendants related to claims filed against Defendants by the injured plaintiff. *Id.* ¶¶ 18–21.

Allstate issued a policy which provided excess personal liability coverage for the Rochkind Insureds between June 13, 1988 until the date of cancellation, June 13, 2000. *Id.* ¶ 18. An addendum excluding lead paint injuries was executed June 13, 1999. *Id.* In this action, Plaintiff argues that if there is coverage for the injuries, the Rochkind Insureds are responsible for a pro rata share of any award of damages. ECF No. 38-1 at 3. Defendants argue that there is in fact coverage and that Allstate is responsible for damages up to and including the policy limits. ECF No. 44 at 7. The crux of this motion is whether *Pennsylvania National Mutual Casualty Insurance Co. v. Roberts*, 668 F.3d 106 (4th Cir. 2012), applies to the language of the contract. If Plaintiff is correct and *Roberts* does apply, the Rochkind Insureds will be responsible for a portion of the damages. If Defendants are successful in convincing the Court *Roberts* is inapplicable, Plaintiff will be responsible for any damages up to the policy limits.

## STANDARD OF REVIEW

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323 n.3 (quoting Fed.R.Civ.P. 56(e)) (internal quotation marks omitted).

In evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *See Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418–19 (4th Cir. 2004). The parties agree that Maryland law applies.

In Maryland, when interpreting a contract, courts "seek to ascertain and effectuate the intention of the contracting parties." *Phoenix Servs. Ltd. P'ship v. Johns Hopkins Hosp.*, 167 Md.App. 327, 391 (2006) (citation omitted). In ascertaining the parties' intent, Maryland adheres to the objective theory of contract interpretation. *See Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51 (2013). The objective theory of contract interpretation requires that a court

> must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Myers v. Kayhoe*, 391 Md. 188, 198 (2006) (quoting *Dennis v. Fire & Police Emps.' Ret. Sys.*, 390 Md. 639, 656–57 (2006)) (internal quotation marks omitted).

The process for determining the intent of the contracting parties is well established in Maryland. First, a court must ascertain whether the agreement is ambiguous. Language in a contract "may be ambiguous if it is 'general' and may suggest two meanings to a reasonably prudent layperson." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985). However, this Court has acknowledged that a contract is not ambiguous merely because the parties disagree as to its meaning. *See Fultz v. Shaffer*, 111 Md.App. 278, 299 (1996). Contracts are

4

interpreted as a whole, and all disputed terms are to be interpreted in context. *See Phoenix Servs.*, 167 Md.App. at 392–93. A court's next step depends on whether it finds that the contract is ambiguous or unambiguous.

If it finds that a contract is unambiguous, then it must only look to the language of the contract to determine the intent of the parties. *See id.* at 392. A court must presume that the terms expressed in the agreement are what the parties intended, regardless of what the parties may have meant, but did not state in the contract. *Id.* When contract language is clear and unambiguous, there is no room for construction and courts may not consider what the parties thought the agreement meant. *See Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985); *see also Phoenix Servs.*, 167 Md.App. at 392. If, on the other hand, a court finds that the contract is ambiguous, it must follow the second alternative, which is considering parol and/or extrinsic evidence to determine the parties' intent when the contract was made. *Phoenix Servs.*, 167 Md.App. at 393.

The parties in their pleadings agree that this case turns upon the Court's interpretation of the simple language below. The parties also agree that "the pro-rata rule is inherently connected to policy language limiting coverage to injuries suffered during the policy period." ECF No. 44 at 7; ECF No. 47 at 3. Plaintiff requests that this Court follow the *Roberts* decision and declare a pro rata share based upon Allstate's "time on the risk," meaning its liability for only the period of time for which it provided coverage. ECF No. 38-1 at 9–11. In lead paint or continuous trigger cases, Maryland applies a pro rata, "time on the risk" allocation of liability. *Md. Cas. Co. v. Hanson*, 169 Md.App. 484, 512 (2006). Under the continuous trigger rule, "repeated exposure to lead, which, in turn, results in lead-based poisoning injuries that continue for several years with continuous exposure . . . triggers insurance coverage during all applicable policy periods." *Id.* at

515. Therefore, under *Roberts*, the Court acknowledged that the time on the risk cases prevented the Court from holding the insurer liable for periods during which it did not provide coverage. *Roberts*, 668 F.3d at 113. The pertinent contract language before the Court is as follows: "This policy applies to an occurrence anywhere in the world **while the insurance is in force**. The declarations show the policy period." ECF No. 44-1 at 2 (emphasis added).

The Rochkind Insureds argue that Allstate's obligation did not cease at the end of the policy period and Allstate is obligated to provide coverage for all injuries no matter when those injuries were suffered. ECF No. 44 at 9. Plaintiff urges the Court to simply apply the rules of contract interpretation under Maryland law, and follow the plain language of the contract. ECF No. 47 at 3. In doing so, Plaintiff urges the Court to apply the *Roberts* case resulting in a pro rata share of liability to Defendants. *Id.* at 3–6.

The pertinent language in *Roberts* was as follows:

> Under the contract, Penn National promised to "pay those sums that [Attsgood] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" as well as "defend any 'suit' seeking those damages." This guarantee was in turn qualified by a provision stating that "this insurance applies to 'bodily injury' and 'property damage' only if . . . the 'bodily injury' or 'property damage' occurs during the policy period."

*Roberts*, 668 F.3d at 110. In comparison, the language in the present case, while not worded exactly the same, has the same import: "This policy applies to an occurrence anywhere in the world while the insurance is in force." ECF No. 44-1 at 2. Whether it is phrased as "during the policy period" or "while the insurance is in force," the resulting plain meaning is the same.

It is hard for this Court to imagine any other interpretation than what is clearly stated in the contract above. The language is clear and unambiguous. "[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position

of the parties would have thought it meant." *Myers*, 391 Md. at 198 (quoting *Dennis*, 390 Md. at 656–57) (internal quotation marks omitted). Even in the light most favorable to Defendants, Plaintiff's interpretation is that of a reasonable person. The policy applies while the insurance is in force. The language above limits the insurer's liability under *Roberts*, invoking a time on the risk analysis.

Just like the Defendants in *Roberts*, Defendants here ignore the plain language of the insurance contract. *Roberts*, 668 F.3d at 112. And again, just like in *Roberts*, Defendants' position conflicts with Maryland law regarding lead paint or continuous trigger cases where Maryland courts engage in a time on the risk allocation of liability. *Id.* at 113. While the Defendants attempt to merge the concept of joint tortfeasor liability with contractual liability, that proposition was clearly rejected by the Court. *Id.* The law that applies to joint and several liability is entirely different, and separate and apart, from Maryland's pro rata allocation law. *Id.* at 114. As the Court stated:

> The rationale behind the pro rata approach bears no relation to the amount of tortfeasors in a particular case . . . . [T]he pro rata method is based on the fact that "an insured purchases an insurance policy to indemnify it against injuries occurring within the policy period, not injuries occurring outside that period."

*Id.* at 114 (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 322 (2d Cir. 2000)).

According to Plaintiff, the policy was in force from June 12, 1996 until the exclusion for lead paint addendum on June 13, 1999. ECF No. 38-1 at 10. Plaintiff is correct in stating that Defendants did not contest the calculations presented in Plaintiff's motion. ECF No. 47 at 7. Therefore, the Court adopts the calculations that the time on the risk assessment for Plaintiff is 62.49%. *See* ECF No. 38-1 at 10.

The Court also agrees that the *Roberts* Court dealt with the same public policy issues presented here. This Court too fully recognizes the tragedy and loss that resulted from the lead paint injury cases. As stated by the Court, "the human costs incurred are undeniably hard." *Roberts*, 668 F.3d at 118. Those public policy issues addressed in *Roberts* are present here, but as in *Roberts* provide no basis for relief requested by Defendants.

## CONCLUSION

In viewing the facts in the light most favorable to the non-moving party, there being no dispute as to any material fact, Plaintiff's Motion in this declaratory judgment action is GRANTED.

Date: 18 January 2019

A. David Copperthite
United States Magistrate Judge

8